### In re OPPEDAHL & LARSON LLP.

Nos. 03–1525, 78/061,755.

United States Court of Appeals, Federal Circuit.

June 25, 2004.

Carl Oppedahl, Oppedahl & Larson LLP, of Dillon, CO, argued for appellant.

Cynthia C. Lynch, Associate Solicitor, United States Patent and Trademark Office, of Arlington, VA, argued for appellee. With her on the brief were John M. Whealan, Solicitor, and Nancy C. Slutter, Associate Solicitor. Of counsel was Linda Moncys Isacson, Associate Solicitor.

Before NEWMAN, RADER, and LINN, Circuit Judges.

RADER, Circuit Judge.

The Trademark Trial and Appeal Board (Board) affirmed the United States Patent and Trademark Office's (PTO's) refusal to register the mark patents.com to appellant Oppedahl & Larson, LLP. Because the proposed mark is merely descriptive under 15 U.S.C. § 1052(e)(1), this court affirms.

## I.

On May 3, 2001, appellant filed an intent-to-use application to register the mark patents.com under 15 U.S.C. § 1051(b)(1). The application eventually identified the relevant goods as "Computer software for managing a database of records and for tracking the status of the records by means of the Internet." Appellant also filed an allegation of use under 15 U.S.C. § 1051(c) with evidence indicating

the mark's use in conjunction with the identified goods. This evidence of use was a printout of appellant's website:

> Welcome to the **patents.com** software download links page. From this page you can reach download locations for Oppedahl & Larson LLP's most popular software:
>
> > • *Feathers*—software for tracking the status of U.S. trademark applications and registered trademarks
> >
> > • *Partridge*—software for tracking the status of U.S. patent ·applications and issued patents
> >
> > • *Raptor*—software for tracking the status of Express Mail shipments to the U.S. Patent & Trademark Office.

The PTO refused to register the mark patents.com based on a finding that the mark is merely descriptive of applicant's goods, i.e., software for tracking patent applications and issued patents. In particular, the PTO found that· the term "patents" merely describes a feature of the goods, and the term ".com" is a top level domain indicator (TLD) without any trademark significance. *See In re Oppedahl & Larson, LLP,* No. 78/061,755, slip op. at 2–3 (TTAB Apr. 16, 2003). The Board affirmed citing *In re Martin Container, Inc.,* 65 USPQ2d 1058 (TTAB 2002) and *In re CyberFinancial.Net, Inc.,* 65 USPQ2d 1789 (TTAB 2002). *In re Oppedahl,* slip op. at 6. Those cases hold that ".com" has no source-identifying significance. In those cases, the addition of a TLD to an otherwise descriptive or generic term did not make the proposed mark registrable. In *CyberFinancial.Net,* the Board applied the reasoning of the Supreme Court in *Goodyear's Rubber Manufacturing Co. v. Goodyear Rubber Co.,* 128 U.S. 598, 602, 9 S.Ct. 166, 32 L.Ed. 535 (1888), which held that adding terms such as "Corp.", "Inc.", and "Co." to a generic term does not add any trademark significance to an otherwise

unregistrable mark. In this appeal, appellant challenges the Board's application of a strict rule that always disregards the use of ".com" and other TLDs in a trademark application. The Government urges this court to sustain the reasoning in *CyberFinancial.Net* and *Martin Container.*

## II.

This court reviews the Board's legal determinations de novo and its factual findings for substantial evidence. See *In re Dial–A–Mattress Operating Corp.,* 240 F.3d 1341, 1344 (Fed.Cir.2001). The Board's placement of a mark on the fanciful-suggestive-descriptive-generic continuum is a question of fact, which this court reviews for substantial evidence. *See In re Nett Designs, Inc.,* 236 F.3d 1339, 1341 (Fed.Cir.2001). Substantial evidence requires "more than a mere scintilla" of evidence, in other words, "such relevant evidence as a reasonable mind would accept as adequate" to support the finding. *In re Pacer Tech.,* 338 F.3d 1348, 1349 (Fed.Cir. 2003) (citing *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1983)).

A mark is merely descriptive if it "consist[s] merely of words descriptive of the qualities, ingredients or characteristics of" the goods or services related to the mark. *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents,* 252 U.S. 538, 543, 40 S.Ct. 414, 64 L.Ed. 705 (1920). Thus, a mark is merely descriptive if it immediately conveys knowledge of a quality or characteristic of the product. *Dial–A–Mattress,* 240 F.3d at 1346. A mark may be merely descriptive even if it does not describe the "full scope and extent" of the applicant's goods or services. *Id.* Descriptive marks can qualify for registration on the Principal Register if they acquire secondary meaning, i.e., distinctiveness. *See* 15 U.S.C. § 1052(f) (2000); *Two Pesos,*

*Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). In this case, appellant has not alleged acquired distinctiveness. Therefore, this court reviews the Board's finding that appellant's mark is merely descriptive.

With respect to marks that include TLDs, the Trademark Manual of Examining Procedure (TMEP) instructs:

### 1209.03(m) Domain Names [R–2]

If a proposed mark includes a TLD such as ".com", ".biz", " .info", the examining attorney should present evidence that the term is a TLD, and, if available, evidence of the significance of the TLD as an abbreviation (*e.g.* ".edu" signifies an educational institution, ".biz" signifies a business). Because TLDs generally serve no source-indicating function, their addition to an otherwise unregistrable mark typically cannot render it registrable. *In re CyberFinancial.Net, Inc.*, 65 USPQ2d 1789, 1792 (TTAB 2002) ("Applicant seeks to register the generic term 'bonds,' which has no source-identifying significance in connection with applicant's services, in combination with the top level domain indicator '.com,' which also has no source-identifying significance. And combining the two terms does not create a term capable of identifying and distinguishing applicant's services."); .... *See also Goodyear*, 128 U.S. at 602, 9 S.Ct. 166 (the incorporation of a term with no source-indicating function into an otherwise generic mark cannot render it registrable). For example, if a proposed mark is composed of merely descriptive term(s) combined with a TLD, the examining attorney must refuse registration on the Principal Register under Trademark Act § 2(e)(1), 15 U.S.C. § 1052(e)(1), on the ground that the mark is merely descriptive. *See* TMEP § 1215.04.

TMEP § 1209.03(m) (3d ed.2003).

In appellant's view, the PTO has erred by, in effect, cutting off the TLDs before evaluation of the consumer's impression of the mark. Appellant argues that the anti-dissection policy outlined in *Dial–A–Mattress* should apply to domain name marks as well. In short, appellant simply asserts that the Board should consider a domain designation as part of the mark as a whole.

The law requires that a mark be "considered in its entirety." *Beckwith*, 252 U.S. at 546, 40 S.Ct. 414. In *Dial–A–Mattress*, this court required the Board to consider marks using telephone area codes, i.e., "1–888–MATRESS," as a whole to determine the commercial impression of the mark. *Dial–A–Mattress*, 240 F.3d at 1345–46. Even though the area code (888) standing alone was "devoid of source-indicating significance," the analysis in *Dial–A–Mattress* required the Board to weigh the entire commercial impression, including the (888) prefix, when assessing the registrability of the mark. *Id.*

In *Dial–A–Mattress*, this court did not say, however, that the Board cannot ascertain the meaning of each of the words or components that make up the entire mark. In considering a mark as a whole, the Board may weigh the individual components of the mark to determine the overall impression or the descriptiveness of the mark and its various components. *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed.Cir.1985). Thus, the PTO may properly consider the meaning of "patents" and the meaning of ".com" with respect to the goods identified in the application. However, if those two portions individually are merely descriptive of an aspect of appellant's goods, the PTO must also determine whether the mark as a whole, i.e., the

combination of the individual parts, conveys any distinctive source-identifying impression contrary to the descriptiveness of the individual parts. *Id.*

This court does not read the PTO's policy to include an absolute prohibition on the possibility that adding a TLD to a descriptive term could operate to create a distinctive mark. Instead the TMEP states that "TLDs *generally* serve no source-indicating function, [and] their addition to an otherwise unregistrable mark *typically* cannot render it registrable." TMEP § 1209.03(m) (3d ed.2003) (emphasis added). This language certainly leaves open the possibility that in unique circumstances a TLD could perform a source-indicating function. The PTO has not applied a bright-line rule that the addition of a TLD to an otherwise descriptive term will never under any circumstances affect the registratibility of a mark. Such a rule would be a legal error.

The PTO has offered the analysis in the *Goodyear* case as applicable in this case. Thus, in this case, the PTO uses that analysis to argue that ".com" possesses no source-identifying characteristics just as "Co." and "Corp." did not affect registrability in *Goodyear*. Although not a perfect analogy, the comparison of TLDs (i.e., ".com," .org," etc.) to entity designations such as "Corp." and "Inc." has merit. The commercial impression created by ".com" is similar to the impression created by "Corp." and "Co.", that is, the association of a commercial entity with the mark. TLDs, however, can convey more than simply the organizational structure of the entity that uses the mark. For example, TLDs immediately suggest a relationship

to the Internet. Thus, the per se rule in *Goodyear* that "Corp.", etc. never possess source-indicating significance does not operate as a per se rule, but more as a general rule, with respect to TLDs.

During oral argument in this case, this court discussed a hypothetical case that might illustrate that a TLD could affect the descriptiveness or registrability of a proposed mark. Under the hypothetical, a company seeks to register the mark tennis.net for a store that sells tennis nets. The applicant openly states that it does no business on the Internet and has no intention to ever use the Internet. This hypothetical applicant's mark consists of a descriptive term—"tennis"—and a TLD—".net." The "net" portion alone has no source-identifying significance. The hypothetical mark as a whole, as is immediately apparent, produces a witty double entendre relating to tennis nets, the hypothetical applicant's product. Arguably, the attachment of the TLD to the other descriptive portion of the mark could enhance the prospects of registrability for the mark as a whole. This hypothetical example illustrates that, although TLDs will most often not add any significant source-identifying function to a mark, a bright-line rule might foreclose registration to a mark with a TLD component that can demonstrate distinctiveness.*

Appellant offers another hypothetical, Amazon.com, to argue that the addition of ".com" will generally, if not always, add source-identifying significance. According to appellant, saying the word "Amazon" to a person on the street may conjure images of a river or a fierce female warrior. In the hypothetical, however, the entire mark

---

* This court does not presume to decide whether this mark is registrable under the Lanham Act or enforceable under common law principles. Rather this example serves merely as an illustration of the way a TLD might enhance the distinctiveness of a mark. The hypothetical might even raise questions about misdescriptiveness or other problems. This court does not presume to offer an advisory opinion on any of these issues.

Amazon.com changes the impression to invoke an online retailer. This hypothetical, however, has a serious flaw in the context of this case. The Board must, of course, determine the commercial impression of a mark in the proper context of the goods or services associated with that mark. *See* 15 U.S.C. § 1052(e)(1) (2000). In its proper context, appellant's proposed hypothetical yields a different result. In context, appellant's hypothetical would state, "I bought this book from Amazon," and "I bought this book from Amazon.com." In that setting, the addition of ".com" adds no source-identifying significance, which is likely to be the case in all but the most exceptional case.

The "Amazon" hypothetical also illustrates another principle that the Board properly recognized, namely that TLD marks may obtain registration upon a showing of distinctiveness. Thus Amazon.com may well denote the source of services of an on-line retailer (rather than a used car dealer or some other association) because the mark has acquired that secondary meaning. The Board properly left that door open for this patents.com mark as well.

In this case, the Board concluded that ".com" conveys to the public that the mark is owned or used by a commercial entity or business. To support that conclusion, the Board cites various dictionary definitions indicating that ".com" is an abbreviation for "company" used in Internet addresses. Appellant argues that domain name registries no longer enforce the use of particular TLDs based on the type of entity seeking to register the domain name, i.e ., ".com" for companies and ".org" for non-profit organizations. Regardless of the current state of Internet governance, the Board is correct that the overall impression of ".com" conveys to consumers the impression of a company or commercial entity on the Internet. "Any competent source suffices to show the relevant purchasing public's understanding of a contested term, including ... dictionary definitions." *Dial–A–Mattress*, 240 F.3d at 1345. Accordingly, substantial evidence supports the Board's conclusion that ".com" indicates a commercial entity. Moreover, under *Goodyear*, as qualified above, that impression bears no trademark significance. The dictionary definitions in the record also establish that ".com" conveys the use of the Internet in association with the mark. Appellant's identification of goods includes the use of the Internet. Accordingly, ".com" is descriptive of this feature of the goods listed in the application.

Substantial record evidence also supports the Board's finding that "patents" is descriptive of a feature of the appellant's goods. Appellant's website shows that it offers software to track, *inter alia*, patent applications and issued patents using the Internet. Tracking patents falls within the scope of the goods identified in the application, i.e., "tracking records." Thus, the term "patents" describes a feature of the goods offered.

The Board also concluded that the combination of "patents" and ".com" does not render the mark as a whole distinctive and registrable. The Board reached this conclusion based on its application of the *Goodyear* analysis, i.e., finding that ".com" holds no source-indicating significance just as "Corp." An analysis of the commercial impression of the mark as a whole as required under the analysis stated above still yields the same result on this record.

Appellant asserts that domain names are inherently distinctive because they can only be associated with one entity or source at a time. The simple fact that domain names can only be owned by one entity does not of itself make them distinc-

tive or source identifying. Telephone numbers and street addresses are also unique, but they do not by themselves convey to the public the source of specific goods or services. Thus, this court declines to adopt a per se rule that would extend trademark protection to all Internet domain names regardless of their use. Trademark law requires evaluation of a proposed mark to ascertain the commercial impression conveyed in light of the goods or services associated with the mark, not a simple check for ownership of an Internet address.

Appellant's goods include patent tracking software by means of the Internet. The term patents.com merely describes patent-related goods in connection with the Internet. The two terms combined do not create a different impression. Rather, the addition of ".com" to the term "patents" only strengthens the descriptiveness of the mark in light of the designation of goods in the application. "Patents" alone describes one feature of the goods—that of tracking patent applications and issued patents. Adding ".com" to the mark adds a further description of the Internet feature of the identified goods. Thus, appellant's argument to consider the mark as a whole only strengthens the descriptiveness finding.

### III.

When examining domain name marks, the PTO must evaluate the commercial impression of the mark as a whole, including the TLD indicator. The addition of a TLD such as ".com" or ".org" to an otherwise unregistrable mark will typically not add any source-identifying significance, similar to the analysis of "Corp." and "Inc." in *Goodyear's Rubber Manufacturing Co.*, 128 U.S. at 602, 9 S.Ct. 166. This, however, is not a bright-line, per se rule. In exceptional circumstances, a TLD may render an otherwise descriptive term suffi-

ciently distinctive for trademark registration. In this case, the mark patents.com, as a whole, is merely descriptive of appellant's goods. The decision of the Board is affirmed.

### COSTS

Each party shall bear its own costs.

*AFFIRMED.*