Mailed:
February 28, 2005

This Opinion is Citable
as Precedent of the
TTAB

gfr

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Eddie Z's Blinds and Drapery, Inc.

_____

Serial No. 76112441

_____

Mark D. Schneider of Gifford, Krass, Groh, Sprinkle, Anderson & Citkowski, P.C. for Eddie Z's Blinds and Drapery, Inc.

Amy E. Hella, Trademark Examining Attorney, Law Office 110 (Chris A.F. Pedersen, Managing Attorney).[1]

_____

Before Hairston, Walters and Rogers, Administrative Trademark Judges.

Opinion by Rogers, Administrative Trademark Judge:

Eddie Z's Blinds and Drapery, Inc. has filed for registration of BLINDSANDDRAPERY.COM on the Principal Register, as a mark for services identified, as amended, as "wholesale distributorship featuring blinds, draperies and other wall coverings; retail store outlets featuring

_____

[1] Maureen L. Dall was the first examining attorney to review the application; Amy Hella is the current examining attorney.

blinds, draperies and other wall and window coverings;

retail store services featuring blinds, draperies, and

other wall coverings via a global computer network," in

Class 35.[2]  The application as filed was based on

applicant's stated intention to use the proposed mark in

commerce in connection with the specified services.

The examining attorney initially refused registration

and later issued a final refusal under Section 2(e)(1) of

the Trademark Act, 15 U.S.C. § 1052(e)(1), asserting that

BLINDSANDDRAPERY.COM would be merely descriptive when used

in connection with applicant's services.  The examining

attorney explained that the designation specifies the type

of goods available from applicant, i.e., "blinds and

draperies," and that the use of the .COM top level domain

(TLD)[3] indicator only indicates that the goods are available

via the Internet.  In an advisory context, the examining

attorney also stated in both the first and final refusals

that the designation might not only be descriptive but

---

[2] Although the examining attorney did not expressly accept this
amended recitation of services, she did not reiterate the refusal
on this ground and, therefore, we conclude that this recitation
of services was accepted.

[3] We take judicial notice of the following definition of TLD:
"(Top-Level-Domain) The highest level domain category in the
Internet domain naming system. There are two types: the **generic**
top-level domains, such as .com, .org, and .net, and the country
codes, such as .ca, .uk and .jp." McGraw Hill Computer Desktop
Encyclopedia 977 (9th ed. 2001) (emphasis added).

might in fact be generic, and she explained that terms found to be generic for goods have also been found generic for services featuring those goods.[4]

Applicant then filed a notice of appeal, an amendment to allege use of the proposed mark in commerce, and an amendment to seek registration on the Supplemental Register. Following reinstatement of the application by the Commissioner after an inadvertent abandonment, the Board acknowledged the appeal and remanded the application to the examining attorney for consideration of the amendments.

The examining attorney accepted the amendment to allege use and, ultimately, the specimen of use,[5] but refused registration on the Supplemental Register on the ground that the proposed mark is generic in connection with the identified services.[6] In a subsequent action, this refusal was made final.

---

[4] In its appeal brief, applicant contends the examining attorney raised the genericness issue for the first time in the second office action. This is clearly not so, as the issue was also referenced in the first office action.

[5] Although the examining attorney initially refused the specimen submitted with the amendment to allege use, this was later accepted and is not an issue on appeal.

[6] Applicant responded to the nonfinal action refusing registration on the Supplemental Register with arguments why BLINDSANDDRAPERY.COM is not generic but made no reference to any

Before addressing the merits of the substantive refusal before us in this appeal, we discuss two procedural issues.  First, applicant made contradictory statements in its submission amending the application to the Supplemental Register and other statements in its brief, which indicate that applicant may believe that its amendment to the Supplemental Registration was made "in the alternative" (i.e., that the amendment is conditional on the Board first finding that the proposed mark is not registrable on the Principal Register because it is merely descriptive).[7]  To the contrary, we find that applicant's amendment to the Supplemental Register was not made in the alternative; that

---

alternative position that the mark is registrable on the Principal Register.

[7] The amendment to the Supplemental Register does not state that it was made only as an alternative and was not coupled with continued argument for registration on the Principal Register. In a "remarks" section of the amendment to the Supplemental Register, applicant states, "it still disagrees with [the] Examining Attorney's position regarding the alleged descriptiveness of the mark."  However, applicant then stated that, in view of the amendment, "…Applicant submits that the application is now in proper form for allowance….  Such action is respectfully requested."
  Applicant's appeal brief states in the introduction that applicant is appealing "the Examining Attorney's 'final' refusal to register the mark BLINDSANDDRAPERY.COM on either the Principal Register or Supplemental Register" and requests reversal. However, the entirety of applicant's legal argument focuses on the test for genericness and includes no argument that the proposed mark is inherently distinctive and entitled to registration on the Principal Register.  In any event, as we find the proposed mark generic, it is not registrable on either register.

applicant has, by its amendment, conceded that its proposed mark is merely descriptive; and that the issue of registrability on the Principal Register is not before us in this appeal.[8]

The second procedural issue concerns the fact that six months and one day after the issuance of the above-referenced final refusal to register on the Supplemental Register, applicant filed a second notice of appeal. Although this would, under ordinary circumstances constitute an untimely appeal, in this case it was unnecessary for applicant to file this particular notice of appeal.[9] The appeal had already been instituted when

---

[8] We note, in any event, that applicant conceded in its response to the first office action, "The '.com' portion of the mark conveys the sense that Applicant's business is commercial. The 'blinds and drapery' portion indicates that the services relate to blinds and drapery. …although each of the elements of applicant's mark may be considered somewhat descriptive, the mark when taken as a whole does not immediately [convey] a sense of Applicant's goods or services."
  The contention that the combination of a descriptive term with a TLD results in an inherently distinctive mark is not persuasive. See In re Oppedahl & Larson, 373 F.3d 1171, 71 USPQ2d 1370, 1374 (Fed. Cir. 2004) (Court affirmed Board decision holding PATENTS.COM to be descriptive, stating "'Patents alone describes one feature of the goods—that of tracking patent applications and issued patents. Adding '.com' to the mark adds a further description of the Internet feature of the identified goods. Thus, appellant's argument to consider the mark as a whole only strengthens the descriptiveness finding.").

[9] Applicant may have thought it necessary to file the second notice of appeal because of a form paragraph included in the examining attorney's final office action, which referenced filing of an appeal as one acceptable response.

applicant appealed from the final refusal to register the proposed mark on the Principal Register. A Board paralegal explained this in an order, and arranged for refund of the second appeal fee. Applicant filed its main brief within the time set by the paralegal's order. The examining attorney has filed a brief and applicant filed a reply brief. Applicant did not request an oral hearing.

Turning to the substantive issue before us, when a proposed mark is refused registration as generic, the examining attorney has the burden of proving genericness by "clear evidence" thereof. See In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987); see also In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110, 1111 (Fed. Cir. 1987). The critical issue is to determine whether the record shows that members of the relevant public primarily use or understand the term sought to be registered to refer to the category or class of goods or services in question. H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc., 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986); In re Women's Publishing Co. Inc., 23 USPQ2d 1876, 1877 (TTAB 1992). Making this determination "involves a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered ...

6

understood by the relevant public primarily to refer to that genus of goods or services?" *Ginn, supra*, 228 USPQ at 530. Evidence of the public's understanding of a term may be obtained from any competent source, including testimony, surveys, dictionaries, trade journals, newspapers and other publications. See *Merrill Lynch, supra*, 4 USPQ2d at 1143 (Fed. Cir. 1987), and In re Northland Aluminum Products, Inc., 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985).

In its appeal brief, applicant does not discuss the class of goods or services at issue in this case. The examining attorney, insofar as she argues that a term which is generic for particular goods is also generic for services related to sales of those goods, implicitly defines the class or genus of services to be the selling of blinds, draperies and related items, on a wholesale basis, through retail outlet stores, and at retail via the Internet. While in some cases, the description of the involved class or genus is subject to dispute, see, e.g., In re American Institute of Certified Public Accountants, 65 USPQ2d 1972, 1981-82 (TTAB 2003), applicant has not disputed the examining attorney's view of the class in this case. Moreover, we find the examining attorney's description appropriate.

To determine what the record reveals about the relevant public's understanding of BLINDSANDDRAPERY.COM requires us first to define the relevant public. In this case, given that the class of services includes both wholesale and retail sales, we must consider the relevant public to include retailers of the goods which applicant distributes, as well as ultimate consumers of the goods who would buy them at retail.

The record in this case includes dictionary definitions of "blinds" and "drapery," a definition explaining that ".com" is a TLD "used mostly by businesses in the U.S. and Canada" (retrieved from www.TechWeb.com), and third-party registrations that include disclaimers of the words "blinds," "drapery" or "blinds and drapery," including variations thereof, such as "blinds & draperies." Of the registrations, the most probative are those for HOUSE OF BLINDS AND DRAPERY (with a disclaimer of "blinds and drapery") and for AMERICAN BLINDS & DRAPERIES and design (with a disclaimer of "blinds & draperies"). The record also includes numerous article excerpts retrieved from the NEXIS database and numerous reprints of web pages retrieved from the Internet.

The NEXIS article excerpts include the following:

8

"I get my thrills out of creating custom draperies," she said.  At the same time, she realizes that being a distributor for the major blind and drapery manufacturers, such as Hunter Douglas or Kirsch, pays the bills and gives her the freedom to create her own designs.
Omaha World Herald, August 12, 1996

As Mr. Rovano looked for ways to support his family, he kept his eye on business trends.  He saw that selling blinds and draperies to homes and companies was a wide-open field.
Pittsburgh Post-Gazette, July 25, 1996

Owned and operated by Hesperia residents Bob and Trish Sole, Express Blinds and Draperies offers quality blinds and drapes at affordable prices.
Daily Press-Victorville CA, October 10, 1996

Deborah Waggoner, owner of Phoenician Blinds and Draperies, has been setting her alarm for 5:21 a.m. once or twice a week for 11 years.
The Arizona Republic, April 29, 1998

"We bought it to live in for the next 20 years," said Parkerson, who owns a Sarasota blind and drapery business.
Sarasota Herald-Tribune, July 20, 1998

One local retailer of window coverings said he thinks the deal might benefit him.  William Kowalski, owner of King Vertical Blind and Drapery in Troy, said he hopes items at Comfortex's Cohoes outlet store will now be priced less competitively against the Hunter Douglas products he sells.
The Times Union (Albany, NY), June 26, 1999

With spring colors beginning to light up the predominantly earth-tone Northwest landscape, many homeowners are turning to local blind and drapery shops for a new view onto the world.
The Columbian (Vancouver, WA), April 16, 2000

If you've got sheets over your windows or your present coverings could use replacing, then head down to Hayward this Saturday when American Blind

and Draperies Inc. opens for its semiannual factory sale of more than 10,000 window coverings.
The San Francisco Chronicle, October 25, 2000

Web page evidence includes the following references:

"Muller's Interior Design specialists will work with you to coordinate your room setting with carpets, unique furniture styles and fabrics, window coverings including blinds and drapery treatments, and unique wallpapers and borders."
http://remseniowa.net/Mullers_Furniture/Mullers-_Furniture.html

The EZRip page includes a list of links to other web pages, under the subject heading "Blinds & Drapery."
http://buyezrip.com/L-Blinds-and-Drapery.htm.

A page "under construction" reads "Coming soon … Custom Contract Blinds will be delivering its complete line of blinds and drapery on the web!"
http://www.ccblinds.com/cataloghome.htm

"Home Decorating Blinds and Drapery Pictures" are collected at
http://wallpaper.jeffzstark.com/home-decorating-blinds.html

An online directory of listings for Faribault, Minnesota, includes one for Picture Perfect Windows, which lists its line of business as "custom blinds and drapery."
http://www.faribaultmn.org/mbr_p1.htm

The online classified ads for The Times-News of Nephi, Utah include an offer of "Custom Blinds and Drapery – Residential or commercial.  Holiday specials.  Call for free estimate…."
http://www.nephitimesnews.com/1200/121300/-classifiedads.htm

A Yahoo directory, under the category "Window Blinds and Shades > Retailers" includes listings that state "Blind Alley – offers custom blinds

and drapery," and "Blinds by Debbie – offers a variety of blinds and drapery products…."
http://dir.yahoo.com/Business_and_Economy/-
Shopping_and_Services

The Texas Home & Garden list of Home Show exhibitors includes a category for "Custom Drapery & Blinds."
http://www.texashomeandgarden.com/index.cfm

A page for MDS Marketing and Design Service, which offers "discounted factory direct prices" for a wide variety of furnishings and home decorative items, promotes its "Levelour, high quality shutters, Plantation shutters, and remote control window treatments including blinds and drapery."
http://www.cornelia.com/products/

A page for Blinds Plus states, "Over the years, we have installed thousands of blinds and drapery treatments for customers throughout East Tennessee."
http://www.blindsplusllc.com/page2.html

A page for Everything for Windows promotes the firm as "the world's most complete blinds and drapery company!"
http://www.everythingforwindows.com/

These third-party registrations, article excerpts and web pages show that "blinds and drapery" is used as the name or designation for a class of products used in homes and businesses and is the term used by many businesses to indicate that they make or sell blinds, drapery and other "window treatments." Both types of evidence, i.e., the evidence that shows there is a class of products known as "blinds and drapery," and the evidence that shows

11

businesses refer to themselves as, or are referred to by others as, a "blinds and drapery" business, are probative evidence of the genericness of BLINDSANDDRAPERY.COM for applicant's services.  See, e.g., <u>In re Half Price Books, Records, Magazines, Incorporated</u>, 225 USPQ 219, 221 (TTAB 1984) (generic terms for products equally generic for a retailer of such products).

Applicant argues that BLINDSANDDRAPERY.COM is similar to 1-888-M-A-T-R-E-S-S, the designation at issue in <u>In re Dial-A-Mattress Operating Corp.</u>, 240 F.3d 1341, 57 USPQ2d 1807 (Fed. Cir. 2001), insofar as applicant's addition of the ".com" TLD to the generic phrase "blinds and drapery" should result in a mark registrable on the Supplemental Register, just as the addition of "1-888" to "matress" resulted in a non-generic mark for the applicant in *Dial-A-Mattress*.  We, however, find the case at hand distinguishable from *Dial-A-Mattress*, for reasons largely articulated by the Board in <u>In re CyberFinancial.Net, Inc.</u>, 65 USPQ2d 1789 (TTAB 2002) and <u>In re Martin Container, Inc.</u>, 65 USPQ2d 1058 (TTAB 2002).

First, it has been held that compound words may be refused as generic when definitions of the individual terms which are joined to create the compound show that such terms are generic.  *Gould*, *supra*, 5 USPQ2d at 1110.  In

12

*Dial-A-Mattress*, the Federal Circuit noted that "'(888)' is not a word" and that 1-888-M-A-T-R-E-S-S is conceptually closer to a phrase than a compound word, so that the *Gould*-type evidence would not be sufficient. *Dial-A-Mattress*, 57 USPQ2d at 1811. Generic terms coupled with a TLD, on the other hand, are considered compound words. See *CyberFinancial* and *Martin Container*, *supra*. In this case, therefore, we have a compound formed by joining the generic term "blinds and drapery" and the generic TLD ".com." Thus, under *Gould*, the examining attorney may carry her burden of proving, by clear evidence, the genericness of BLINDSANDDRAPERY.COM by introducing, as she has, evidence of the genericness of "blinds and drapery" and ".com."

We recognize, of course, that there may be other generic terms for wholesale distributors and retailers of blinds and drapery, other than the term "blinds and drapery." For example, "window treatments" appears from the record to be another generic term for the goods that are the subject of applicant's services. However, that there may be other generic terms that are functionally equivalent to "blinds and drapery" does not make that term any less generic. See In re Sun Oil Co., 426 F.2d 401, 165 USPQ 718, 719 (Rich, J., concurring)(CCPA 1970)(all generic names for a product belong in the public domain); see also

13

Continental Airlines Inc. v. United Air Lines Inc., 53 USPQ2d 1385, 1394 (TTAB 1999).

We also are aware of the Federal Circuit's ruling in In re Oppedahl & Larson LLP, 373 F.3d 1171, 71 USPQ2d 1370 (Fed. Cir. 2004), on which applicant relies in its reply brief. *Oppedahl* cautions that while the "addition of a TLD such as '.com' or '.org' to an otherwise unregistrable mark will typically not add any source-identifying significance," this "is not a bright-line, per se rule" and that "exceptional circumstances" might yield a different result. *Id.* at 71 USPQ2d 1374. We do not, however, view the *Oppedahl* decision as creating a per se rule that the addition of a TLD to a generic term will always result in creation of a potential mark, i.e., a descriptive term that is registrable on the Supplemental Register and may at some point in the future be registrable on the Principal Register. Clearly, the *Oppedahl* decision's reference to exceptional circumstances, and its discussion of a hypothetical mark employing a TLD that could be considered not merely descriptive, reveal that the Federal Circuit has anticipated situations whereby the coupling of an otherwise unregistrable term and a TLD create a whole greater than the sum of its parts. We do not believe applicant's combination of terms yields such a result.

The second reason this case is not, contrary to applicant's contention, akin to that in *Dial-A-Mattress*, is that 1-888-M-A-T-R-E-S-S was determined to be a mnemonic representing a particular telephone number. Applicant's BLINDSANDDRAPERY.COM is not a mnemonic, but rather, a correctly spelled generic term followed by the TLD ".com." See *CyberFinancial*, 65 USPQ2d at 1793-94, and *Martin Container*, 65 USPQ2d at 1061. Further, as explained in *CyberFinancial*, mnemonics representing telephone numbers correspond to unique ten-digit numbers that can be used by only a single entity, whereas the precise generic term and TLD combination employed by applicant can be incorporated into other domain names. A "blinds and drapery" concern should not be precluded from combining its name with the generic compound term BLINDSANDDRAPERY.COM to create thereby a different domain name from that of applicant. *CyberFinancial*, 65 USPQ2d at 1793.

Our final observation relates to a distinction in applicant's recitation of services. The amended recitation of services can be read to state that applicant's wholesale distributorship services and its retail store outlet services are not conducted via the Internet, whereas its retail store services are conducted via the Internet. So long as BLINDSANDDRAPERY.COM is generic for one of the

recited services, it must be refused registration.  It need not be shown to be generic for each of the recited services.  See *CyberFinancial*, at 65 USPQ2d at 1791.

Decision:  The refusal to register BLINDSANDDRAPERY.COM on the Supplemental Register, on the ground that it is generic and thereby incapable of distinguishing applicant's services, is affirmed.