THIS DISPOSITION IS
CITABLE AS PRECEDENT OF
THE TTAB

Mailed: March 6, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Finisar Corporation
_____

Serial No. 76300876
_____

Andrew J. Gray IV of Morgan, Lewis & Bockius LLP for Finisar Corporation.

Attiya Malik, Trademark Examining Attorney, Law Office 112 (Janice O'Lear, Managing Attorney).[1]
_____

Before Quinn, Kuhlke and Walsh, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Finisar Corporation has filed an application to register SMARTSFP (in standard character form) on the Principal Register for "optical transceivers" in International Class 9.[2]

The examining attorney refused registration under Section 2(e)(1) of the Trademark Act, 15 U.S.C.

---

[1] During the course of prosecution, this application was reassigned to the above-noted examining attorney.

[2] Application Serial No. 76300876, filed August 15, 2001, alleging a bona fide intent to use the mark in commerce.

§1052(e)(1), on the ground that applicant's mark is merely descriptive of its goods.

When the refusal was made final, applicant appealed and requested reconsideration of the final decision. On November 2, 2004 the examining attorney denied the request for reconsideration and the appeal was resumed.[3] Briefs have been filed, but applicant did not request an oral hearing. We affirm the refusal to register.

"A mark is merely descriptive if it 'consist[s] merely of words descriptive of the qualities, ingredients or characteristics of' the goods or services related to the mark." In re Oppendahl & Larson LLP, 373 F.3d 1171, 71 USPQ2d 1370, 1371 (Fed. Cir. 2004), quoting, Estate of P.D. Beckwith, Inc. v. Commissioner, 252 U.S. 538, 543 (1920). See also In re MBNA America Bank N.A., 340 F.3d 1328, 67 USPQ2d 1778, 1780 (Fed. Cir. 2003). The test for determining whether a mark is merely descriptive is whether it immediately conveys information concerning a quality, characteristic, function, ingredient, attribute or feature of the product or service in connection with which it is

---

[3] The request for reconsideration included a request to amend this application to seek registration on the Supplemental Register. This request was denied by the examining attorney inasmuch as applicant did not submit an amendment to allege use. TMEP §1102.03 (4th ed. 2005). In its September 17, 2004 response applicant indicated that it was unable to provide proof of use and maintained its arguments against the Section 2(e)(1) refusal.

used, or intended to be used. In re Engineering Systems Corp., 2 USPQ2d 1075 (TTAB 1986); In re Bright-Crest, Ltd., 204 USPQ 591 (TTAB 1979). It is not necessary, in order to find a mark merely descriptive, that the mark describe each feature of the goods or services, only that it describe a single ingredient, quality, characteristic, function, feature, purpose or use of the goods. In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987). Further, it is well-established that the determination of mere descriptiveness must be made not in the abstract or on the basis of guesswork, but in relation to the goods or services for which registration is sought, the context in which the mark is used, and the impact that it is likely to make on the average purchaser of such goods or services. In re Abcor Dev. Corp., 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978).

We are persuaded by the evidence of record that the separate terms SMART and SFP are merely descriptive of applicant's identified goods and that when combined do not present a unique or incongruous meaning. In re Tower Tech, Inc., 64 USPQ2d 1314 (TTAB 2002).

As stated by applicant, the letters SFP are "an abbreviation for small form-factor pluggable as used in connection with optical transceivers." Br. p. 3. The

examining attorney submitted an excerpt from the

acronymfinder.com website which lists SFP as an

abbreviation for "small form-factor pluggable."  The

examining attorney also submitted the following excerpt

from a third-party website that provides further

information as to the significance of the abbreviation SFP

used in connection with optical transceivers:

> Small form-factor pluggable (SFP) is a
> specification for a new generation of optical
> modular transceivers.  The devices are designed
> for use with small form factor (SFF) connectors,
> and offer high speed and physical
> compactness...SFP transceivers are expected to
> perform at data speeds of up to five gigabits per
> second...Because SFP modules can be easily
> interchanged, electro-optical or fiber optic
> networks can be upgraded and maintained more
> conveniently than has been the case with
> traditional soldered-in modules...Several
> companies have formed a consortium supporting the
> use of SFP transceivers to meet their common
> objectives of broad bandwidth, small physical
> size and mass, and ease of removal and
> replacement.
> www.searchnetworking.com.

In arguing against the refusal, applicant contends

that it has not conceded that SFP is merely descriptive of

optical transceivers.[4]  Applicant argues that the average

---

[4] We note that in its response to the initial refusal under Section 2(e)(1), applicant stated "While SFP is an initialism for 'small form-factor pluggable,' a term used in connection with optical transceivers such as those identified in Applicant's application, the term SMART has no such recognized meaning in connection with optical transceivers."  Applicant's Response p. 2 (April 30, 2003).  Applicant continues in the response to argue that SMART is not descriptive of its goods or in the alternative

4

consumer does not recognize the SFP acronym and connecting the SFP acronym to optical transceivers requires imagination, thought, or perception. Br. p. 10. More specifically, applicant argues that "[e]ven if the average consumer recognizes the acronym SFP, the consumer would have to pause to connect SFP with optical transceivers because small form-factor pluggable is not the generic name for optical transceivers; rather it refers to a specification for optical transceivers." Br. p. 10.

We determine the descriptiveness of a term in the context of the goods in issue, not in the abstract. From the description in searchnetworking.com, an SFP optical transceiver is a specific type of transceiver distinguished from traditional soldered-in modules, and is also referred to only by its abbreviation SFP. With regard to applicant's argument that the average consumer would not recognize the abbreviation, we must look at the average or ordinary prospective customers of applicant's identified

---

the combination of SMART and SFP combine to create a unique commercial impression. Further, in a subsequent response, applicant states "Applicant has not disputed that SFP is an initialism used in connection with optical transceivers. At issue, therefore, is whether SMART is merely descriptive of optical transceivers." Applicant's Response p. 2 (September 15, 2004). It would appear that applicant has in fact conceded that SFP is a known "initialism" used in connection with its goods and is merely descriptive of a significant feature of its goods. However, there is no need to rely on any possible concession as

goods. In re Omaha National Corp., 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987). The applications for applicant's optical transceivers are presented in the following excerpt from applicant's product literature attached to its March 27, 2002 response: "Finisar manufactures a broad line of optical transceivers for gigabit-rate fiber optic communication applications such as: Gigabit Ethernet; Fibre Channel; SONET/SDH; CWDM Metro Access." The average consumer of an optical transceiver would certainly know and be familiar with the various features available, including soldered-in versus SFP. A consumer of these products would have to be well-versed in the product features to assess compatibility with the consumer's fiber optic communications applications. Nor would it take any speculation or mental leap to understand that SFP refers directly to applicant's optical transceiver, informing the consumer that this particular optical transceiver is an SFP or small form-factor pluggable transceiver. Frankly, in applicant's own words SFP directly refers or describes a "specification" (i.e., a significant feature) of applicant's goods.

---

the record fully supports a finding that SFP is merely descriptive of applicant's goods as discussed above.

The record also supports a finding that the term SMART when used in connection with applicant's goods is merely descriptive of them. The examining attorney argues that the term "smart" conveys to prospective consumers that "the transceivers contain a computer chip or micro-chip, are electronically guided and/or are computer programmed." Br. p. 6. Applicant contends that the term SMART is too broad to be descriptive and that the examining attorney "failed to articulate any reasons or bases (much less provide evidence) supporting the position that SMART is not general or broad or that SMART does not include many categories of goods." Reply Br. p. 5. The following relevant definitions of the word "smart" have been made of record:

> In computer technology, a relative term, indicating how sophisticated a program or machine is and how many capabilities it has. A "smart missile" is one that is guided electronically, as opposed to a non-hi-tech missile; "smart modems" have more capabilities and can be programmed to make more decisions than earlier modems. www.computeruser.com
>
> 5.a. Of, relating to, or being a highly automated device, esp. one that imitates human intelligence.
> The American Heritage College Dictionary (3rd ed. 1992)
>
> Function: adjective ... 7.a: being a guided missile <a laser-guided smart bomb> b: operating by automation <a smart machine tool> c: Intelligent.
> Merriam-Webster Online Dictionary, www.m-w.com.

7

We also take judicial notice of the following definition of "smart":

> *Informal:* equipped with, using, or containing electronic control devices, as computer systems, microprocessors, or missiles: a smart phone; or smart copier.
> The Random House Unabridged Dictionary (2d ed. 1993).[5]

We must look at these definitions within the context of the goods for which registration is sought. In re Chopper Industries, 222 USPQ 258 (TTAB 1984); In re Bright-Crest, Ltd., 204 USPQ 591 (TTAB 1979). As has been noted by the Board over a decade ago, "It is undeniable that computers have become pervasive in American daily life. The 'computer' meaning of the term 'smart' as is the case with many 'computer' words, is making its way into the general language." In re Cryomedical Sciences Inc., 32 USPQ2d 1377, 1378 (TTAB 1994). Applicant's optical transceivers are highly automated devices that imitate human intelligence by self monitoring and reporting operational and diagnostic information as shown by applicant's product literature. For example, applicant's SMARTSFP transceivers "Provide real-time monitoring of: transceiver temperature, Laser bias current, Transmitted

---

[5] University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594, 596 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983) (Board may take judicial notice of dictionary definitions).

optical power, received optical power, Transceiver supply voltage." In addition, applicant's "enhanced digital diagnostic monitoring interface...defines a sophisticated system of alarm and warning flags, which alerts end-users when particular operating parameters are outside of a factory set normal range" and "The operating and diagnostics information is monitored and reported by a Digital Diagnostics Transceiver Controller (DDTC) inside the transceiver, which is accessed through a 2-wire serial interface. When the serial protocol is activated, the serial clock signal (SCL, Mod Def 1) is generated by the host. The positive edge clocks data into the SFP transceiver into those segments of the E2PROM that are not write-protected." See exhibits attached to Applicant's Response to Office Action (March 27, 2002).

As stated by the examining attorney, "in light of the dictionary definitions...SMART for optical transceivers describes that the transceivers 'have more capabilities and can be programmed to make more decisions than earlier' versions of transceivers [and] [e]ven the definition offered by Applicant that SMART means a 'highly automated device that imitates intelligence' supports the conclusion that a SMART optical transceiver is a 'highly automated device' that 'imitates intelligence' and is programmed to

9

perform a variety of functions..." Brief p. 13. Applicant relies on In re Hutchinson Technology Inc., 852 F.2d 552, 7 USPQ2d 1490 (Fed. Cir. 1988) and argues that the term "smart" is similar to the term "technology" in the sense that they are both broad terms that include many categories of goods such that they cannot convey an immediate idea of the ingredients, qualities or characteristics of the goods. We are not persuaded by this analysis. While it may be true that the term "smart" may be used on an array of goods, e.g., telephones, missiles, copiers, its use in these various contexts has a consistent specific meaning; it tells the consumer that the product is highly automated and capable of computing information. As shown above, applicant's optical receivers are capable of computing diagnostic information and forwarding that information to "alert" end-users with regard to the product's operating parameters.

We note that applicant has made of record printouts of several use-based third-party registrations on the Principal Register for marks that include the term SMART, which are registered without disclaimers. Applicant argues that these registrations show an Office practice of allowing SMART marks to register. The examining attorney, in turn, submitted several use-based third-party

registrations where the term SMART was disclaimed, registered under Section 2(f) based on a showing of acquired distinctiveness, or on the Supplemental Register for a variety of computer, electronic and automated devices.  However, as expressly stated by the court in In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001), "The Board must decide each case on its own merits, … Even if some prior registrations had some characteristics similar to Nett Designs' application, the PTO's allowance of such prior registrations does not bind the Board or this court.  (Internal citation omitted.)[6]  Cf. In re First Draft, Inc., 76 USPQ2d 1183 (TTAB 2005) (even proof that various examining attorneys have registered a particular type of mark in the past does not establish that there is an Office practice holding such marks are generally registrable.)  While uniform treatment is a goal, our task is to determine based on the record before us,

---

[6] Applicant also submitted listings of third-party registrations with the term SMART in support of its contention that the PTO practice is to allow registration of this term.  These listings have little to no probative value.  Applicant argues that "Of the 1148 registered marks consisting of or containing SMART in International Class 9, only 128 contain a disclaimer of SMART," (Applicant's Response p. 4 (April 30, 2003)) and concludes from this that its mark "cannot be considered to be merely descriptive when the Patent and Trademark Office has issued so many registrations for similar marks – without disclaimers," id. p. 5. However, applicant's two listings do not account for those registrations that issued under Section 2(f) of the Trademark Act

whether applicant's mark is merely descriptive.  In re

Cryomedical, supra.

The examining attorney also submitted search results

for "smart transceivers" retrieved from the Google search

engine and printouts of third-party websites that include

references to "transceivers."  The Google search results

include the following uses of the word "smart":

> The term "smart transceiver" refers to an RF
> transceiver with integrated microcontroller (see
> Sec. 3).
> www.springerlink.com
>
> Distributed Network Intelligence using the
> sophisticated Micro-cell software embedded in
> each 'smart' transceiver, messages are
> communicated by the best…
> www.ademcosecurity.com.
>
> The signal is transmitted directly to the central
> receiver if the subscriber is within radio range,
> or is relayed through one or more smart
> transceivers.
> www.aes-intellinet.com
>
> These "smart" transceivers are used to build
> high-speed data links over single-mode fiber
> optics.
> Investor.finisar .com
>
> All three models are complete smart transceivers
> including an embedded communications controller
> and firmware to simplify the task of
> incorporating RF data...
> www.bbwexchange.com
>
> JDSU Expands Module Suite – July 09, 2001
> Includes new optical amplifiers and transponders

---

based upon a showing of acquired distinctiveness or on the
Supplemental Register.

NFOEC Newswire Feed:  Finisar Shipping 'Smart' Transceivers – July 09.
www.lightreading.com

With an array of displays, the machine is designed to allow configuration and testing of smart transceivers from a Windows PC.
www.privateline.com

...Chip controls Fast Ethernet; "smart" transceivers give interoperability a chance; Rail-to-rail op amp has slew of 350 V/cmicrosecond.
www.eet.com

The system's smart transceivers dynamically adapt themselves to changes in the network, continually optimizing the system.
www.keltroncorp.com

Integration of RF MEMS devices for smart transceivers; Integration of MOEMS devices for intelligent optical signal processors;
www.uta.edu

Smart Transceivers Raise the Bar For Device Networking Echelon Corp.
www.eepn.com

Echelon's New Smart Transceivers Raise Benchmark For High Performance, Affordable Device Networking Solutions.
www.hometoys.com

The third-party websites include the following uses of the word "smart":

Denver Alarm provides commercial alarm monitoring services for both fire alarm systems and security systems...link fire alarm and burglar alarm communicators to a central monitoring station. And criminals know.  Using the sophisticated Micro-cell software embedded in each "smart" transceiver.
www.spy-Review.com

> AES-IntelliNet long range wireless systems use patented "smart" routing technology, where every transceiver is also a repeater.  These smart transceivers align automatically to create a rugged, adaptive communications net, delivering alarm signals quickly over a web of redundant paths.  AES networks are operator owned. www.aes-intellinet.com

Applicant attacks the search results and website printouts noting that they refer to different types of transceivers used in different fields (e.g. fire and burglar alarms or wireless transceivers) or that they use the term "smart" as a product name and not to describe the product (e.g., Echelon Corporation's Smart Transceivers). While some of these examples may not present an unambiguous descriptive use, some examples clearly show use of the term to describe a highly automated transceiver.  See e.g., www.bbwexchange.com.  Applicant is correct in noting that many of the examples do not involve optical transceivers which minimizes their probative value, but what we may draw from these examples is that use of the term "smart," in regard to transceivers generally, indicates that the transceivers are highly automated.  This is not surprising given the use of "smart" to indicate a highly automated device in a variety of fields.  See In re Tower Tech, Inc., supra (SMARTTOWER merely descriptive of "commercial and industrial cooling towers and accessories therefor, sold as

14

a unit"); In re Cryomedical Sciences Inc., supra (SMARTPROBE merely descriptive of disposable cryosurgical probes). See also The Random House Unabridged Dictionary (2d ed. 1993) (smart phone, smart copier) made of record by judicial notice. We note that even applicant's use of the term "smart," used as an adjective to describe its product, as shown in the excerpt from investor.finisar.com, highlights the descriptive nature of this term. Applicant argues that its use in connection with its goods cannot be used as evidence of mere descriptiveness. This is simply not the case. If an applicant uses its proposed mark to describe its goods, an examining attorney is not precluded from using such evidence to support a refusal. See In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987).

While we have discussed the Internet evidence, we must note that search results alone are of limited probative value, in that use in a search summary may indicate only that the two words in an overall phrase appear separately in the website literature. In re Fitch IBCA Inc., 64 USPQ2d 1058 (TTAB 2002); TBMP § 1208.03. However, as shown above, many of the examples clearly show the term "smart" being used to modify transceivers to indicate automated capabilities, and, as such, at a minimum, confirm what is

15

already established by the other evidence of record. The determination that the term "smart" is merely descriptive of applicant's optical transceivers is supported by the dictionary definitions of "smart" and applicant's product literature.

Viewing SMARTSFP as a whole, we find no merit in applicant's argument that the "composite mark SMARTSFP creates a suggestive unique commercial impression." Br. p. 10. The compression of these two descriptive terms is not incongruous nor does it present a unique impression. Applicant argues that "the combination of the allegedly merely descriptive terms SMART and SFP creates the suggestive composite mark SMARTSFP because the wide-breadth and general nature of the term SMART, coupled with a consumer's unfamiliarity with SFP, requires mental pause and thought." Br. p. 13. As noted above, a consumer of applicant's products will be familiar with the abbreviation SFP. Moreover, the term SMART is not broad and general as used in connection with applicant's goods but rather, in a concise manner, informs the consumer that applicant's product has automated capabilities. The facts in this record are distinguished from In re Hutchinson Technology,

16

supra[7] where the Court found that the applicant's

"concession that 'technology' is used on many goods similar

to those listed in Hutchinson's application" (In re

Hutchinson Technology, supra, 7 USPQ2d at 1492) was not

sufficient to find the word "technology" merely descriptive

of the applicant's goods, and that at most applicant's

concession could indicate that it is a "weak mark for these

goods," and that the Board "never considered what the

purchasing public would think when confronted with the mark

as a whole." Id. The record before us contains dictionary

definitions and applicant's product literature that

conclusively establish the mere descriptiveness of SMART

and SFP.[8] Moreover, despite the fact that the terms are

presented as one word in the mark SMARTSFP, in the context

of these goods purchased by knowledgeable consumers, the

meaning of each term will be readily apparent and this

straightforward combination does not present any

incongruity. See In re Gould Paper Corp., supra.

---

[7] Applicant, in its argument, also includes reference to a non-citable decision. Applicant is advised that it may not cite to decisions that have not been marked as citable precedent. In re A La Vielle Russie Inc., 60 USPQ2d 1895, 1897 n.2 (TTAB 2001).

[8] We further note, that the issue before the Court in In re Hutchinson was a surname refusal not a descriptiveness refusal, and the Court remanded the case for entry of the disclaimer of the word "technology."

Thus, we are persuaded that when applied to applicant's goods, the term SMARTSFP immediately describes, without conjecture or speculation, a significant feature or function of applicant's goods, namely optical transceivers that contain automated capabilities and are small form factor pluggable. Nothing requires the exercise of imagination, cogitation, mental processing or gathering of further information in order for prospective consumers of applicant's goods to perceive readily the merely descriptive significance of the term SMARTSFP as it pertains to applicant's goods.

Finally we do not have any doubt that this mark is merely descriptive in connection with the identified goods. In re Atavio, 25 USPQ2d 1361, 1362 (TTAB 1992).

**Decision**: The refusal to register is affirmed.