THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: September 13, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Positec Group Limited*

_____

Serial No. 77920346

_____

Scot A. Duvall of Middleton Reutlinger,
    for Positec Group Limited.

Alyssa Paladino Steel, Trademark Examining Attorney, Law Office 107,
    J. Leslie Bishop, Managing Attorney.

_____

Before Bucher, Wellington and Hightower,
    Administrative Trademark Judges.

Opinion by Bucher, Administrative Trademark Judge:

Positec Group Limited ("applicant") seeks registration on the Principal Register of

the designation **SUPERJAWS** (*in standard character format*) for the following goods:

> machine tools, namely, jaws for use in the precision clamping of work pieces; workbench accessories, namely, metal attachable machine tool holder in the nature of clamps, jaws, and vices for holding items to be welded; workbench accessories, namely, workbench attachments in the nature of machine tool holders in International Class 7; and
>
> hand tools, namely, vices, metal vice jaws, and clamps; workbench accessories, namely, workbench attachments in the nature of tool holders, particularly, clamps, jaws and vices for holding logs and timber for sawing, carving,

and cutting; workbench accessories, namely, workbench attachments in the nature of tool holders for holding chainsaw blades for sharpening; workbench accessories, namely, workbench attachments in the nature of tool holders, particularly, clamps, jaws, and vices for clamping of work pieces; workbench accessories, namely, non-metal workbench attachments in the nature of tool holders, particularly, clamps, vices, and jaws for mounting saws; workbench accessories, namely, attachable non-metal tool holders in the nature of clamps, jaws, and vices for holding items to be cut; workbench accessories, namely, metal attachable tool holders in the nature of clamps, jaws, and vices for holding items to be welded; non-metal tool stands in International Class 8.[1]

The examining attorney has refused registration of applicant's proposed mark under Trademark Act Section 2(e)(1) because the proposed mark merely describes a characteristic, quality, function, feature, purpose or use of the applicant's goods. 15 U.S.C. § 1052(e)(1).

After the examining attorney made the refusal final, applicant appealed to this Board. We affirm the refusal to register.

Applicant argues that the examining attorney has erroneously construed the word "Jaws" as merely descriptive and the word "Super" as laudatory, when the terms considered individually or in combination are at worst suggestive; that the examining attorney has erroneously applied a *per se* rule that the term "Super," when combined with a merely descriptive term must result in a composite that is descriptive; that the majority of third-party registrations in the record confirm that the word "Super" is not merely descriptive; that the combined term "Superjaws" is a

---

[1] Application Serial No. 77920346 was filed on January 26, 2010, under Section 1(b) of the Act based upon applicant's claim of a *bona fide* intention to use the mark in commerce.

unitary term, which operates here as a *double entendre*, thereby creating an inherently distinctive mark; and finally, applicant argues that the examining attorney failed to resolve in applicant's favor, as she must, the significant doubt herein as to the determination of mere descriptiveness.

By contrast, the examining attorney contends that applicant actually uses the term "Jaws" to identify its goods in both International Classes 7 and 8; that applicant's use of "the term 'super' describes the extreme or excessive strength that the applicant's 'jaws' may have compared to average jaws and other machine tools and hand tools"; that the composite term is descriptive of applicant's goods and does not create a unique, incongruous, or non-descriptive meaning in relation to the named goods; that the third-party registrations simply illustrate that the words "super" and "jaws" are individually descriptive; specifically, that while the term "super" may have once been suggestive (as reflected in some older third-party registrations), it has lost its distinguishing and origin-denoting characteristics through use in a descriptive sense over a period of time, and is now regarded by the purchasing public as nothing more than a merely descriptive designation; that applicant's proposed mark, "SuperJaws," is not a *double entendre* and is not inherently distinctive; and that in the present case, the evidence of record leaves no doubt but that the proposed mark is merely descriptive.

## A. The applicable law

A mark is deemed to be merely descriptive of goods or services, within the meaning of Section 2(e)(1), if it forthwith conveys an immediate idea of an

ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012); *In re Abcor Development*, 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978).

Whether a mark is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with the goods or services, and the possible significance that the mark would have to the average purchaser of the goods or services because of the manner of its use. *In re Bayer Aktiengesellschaft,* 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007); *In re Bright-Crest, Ltd.*, 204 USPQ 591, 593 (TTAB 1979). It is settled that "[t]he question is not whether someone presented with only the mark could guess what the goods or services are. Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them." *In re Tower Tech Inc.*, 64 USPQ2d 1314, 1316-17 (TTAB 2002), *cited with approval in DuoProSS Meditech Corp. v. Inviro Medical Devices Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012).

We must, of course, view the proposed mark as a whole. *See, e.g.*, *DuoProSS*, 103 USPQ2d at 1756. When two or more merely descriptive terms are combined, the determination of whether the composite mark also has a merely descriptive significance turns on whether the combination of terms evokes a new and unique commercial impression. If each component retains its merely descriptive

4

significance in relation to the goods or services, the combination results in a composite that is itself merely descriptive. *See, e.g.*, *In re Oppedahl & Larson LLP,* 373 F.3d 1171, 71 USPQ2d 1370 (Fed. Cir. 2004) (**PATENTS.COM** merely descriptive of computer software for managing a database of records that could include patents and for tracking the status of the records by means of the Internet); *In re Petroglyph Games Inc.*, 91 USPQ2d 1332, 1341 (TTAB 2009) ("because the combination of the terms does not result in a composite that alters the meaning of either of the elements, refusal on the ground of descriptiveness is appropriate"), *cited with approval in Dalton v. Honda Motor Co.*, 425 F. App'x 886, 893 (Fed. Cir. 2011) (not precedential); *In re Carlson*, 91 USPQ2d 1198 (TTAB 2009) (**URBANHOUZING** merely descriptive of real estate brokerage, real estate consultation and real estate listing services); *In re Tower Tech, Inc.*, 64 USPQ2d 1314 (**SMARTTOWER** merely descriptive of commercial and industrial cooling towers); *Cf. In re Gould Paper Corp.*, 834 F.2d 1017, 1018, 5 USPQ2d 1110, 1111-12 (Fed. Cir. 1987) (finding **SCREENWIPE** generic as applied to pre-moistened antistatic cloths for cleaning computer and television screens).

## B.   Evidence of Record

The examining attorney included in the record various dictionary entries showing that applicant's use of the term "super" describes the extreme or excessive strength that the applicant's "jaws" may have compared to average grasping power tools or other machine tools and hand tools:

***su•per***
*Pronunciation:* (soo'p*u*r),—*adj.*
**1.** <mark>of the highest degree, power, etc</mark>.
**2.** of an extreme or excessive degree.
**3.** *Informal.*<mark>very good; first-rate; excellent</mark>.
**4.** (of measurement) superficial.
**5.** superfine.

***super-***
a prefix occurring originally in loanwords from Latin, with the basic meaning "above, beyond." Words formed with **super-** have the following general senses: "to place or be placed above or over" (*superimpose; supersede*), "a thing placed over or added to another" (*superscript; superstructure; supertax*), "situated over" (*superficial; superlunary*) and, more figuratively, "an individual, thing, or property that exceeds customary norms or levels" (*superalloy; superconductivity; superman; superstar*), "an individual or thing larger, more powerful, or with wider application than others of its kind" (*supercomputer; superhighway; superpower; supertanker*), "exceeding the norms or limits of a given class" (*superhuman; superplastic*), "having the specified property to a great or excessive degree" (*supercritical; superfine; supersensitive*), "to subject to (a physical process) to an extreme degree or in an unusual way" (*supercharge; supercool; supersaturate*), "a category that embraces a number of lesser items of the specified kind" (*superfamily; supergalaxy*), "a chemical compound with a higher proportion than usual of a given constituent" (*superphosphate*) [2]

***super***
*adjective* \ˈsü-pər\

1 *a* **:** <mark>of high grade or quality</mark>
  *b* —used as a generalized term of approval <a *super* cook>
2**:** <mark>very large or powerful</mark> <a *super* atomic bomb>
3**:** exhibiting the characteristics of its type to an extreme or excessive degree <*super* secrecy> [3]

***jaw*** *Pronunciation:* ( jô), —*n.*
**1.** either of two bones, the mandible or maxilla, forming the framework of the mouth.
**2.** the part of the face covering these bones, the mouth, or the mouth parts collectively: *My jaw is swollen.*
**3.** jaws**,** anything resembling a pair of jaws or evoking the concept of grasping and holding: *the jaws of a gorge; the jaws of death.*
**4.** <mark>*Mach.*</mark>
  <mark>**a.** one of two or more parts, as of a machine, that grasp or hold something: *the jaws of a vise*</mark>.
  **b.** any of two or more protruding parts for attaching to or meshing with similar parts. [4]

---

[2] RANDOM HOUSE UNABRIDGED DICTIONARY, http://dictionary.infoplease.com/super, as attached to Office Action of April 9, 2012.

[3] MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/super, as attached to Office Action of April 26, 2010.

[4] RANDOM HOUSE UNABRIDGED DICTIONARY, http://dictionary.infoplease.com/super, as attached to Office Action of April 9, 2012.

**jaw**

*noun* \ˈjȯ\
1 *a* : either of two complex cartilaginous or bony structures in most vertebrates that border the mouth, support the soft parts enclosing it, usually bear teeth on their oral margin, and are an upper that is more or less firmly fused with the skull and a lower that is hinged, movable, and articulated with the temporal bone of either side — compare MANDIBLE, MAXILLA

   *b* : the parts constituting the walls of the mouth and serving to open and close it — usually used in plural

   *c* : any of various organs of invertebrates that perform the function of the vertebrate jaws

2 : something resembling the jaw of an animal: as

   *a* : one of the sides of a narrow pass or channel

   *b* : ==either of two or more opposable parts that open and close for holding or crushing something between them==

3 *a* : a space lying between or as if between open jaws <escaped from out of the *jaws* of the whale>

   *b* : a position or situation in which one is threatened <rode into the *jaws* of danger>

4 : a friendly chat

[5]

The examining attorney also included in the record a captured image from a Sears website containing the following listing:



[6]

In addition, the examining attorney placed into the record the following third-party registrations, allegedly to demonstrate that the Office generally treats the word "super" as a term that is laudatorily descriptive in an overarching sense (i.e., as contrasted with merely referring to a particular feature

---

[5] MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/jaw, as attached to Office Action of April 26, 2010.

[6] Copy of Sears' online web page, http://www.sears.com/, as attached to Office Action of April 9, 2012.

or aspect of the goods) when part of compound or composite marks registered in connection with goods in International Classes 7 and 8:

| Mark | Goods | Comments |
|---|---|---|
| **SUPERSTART** | for "solid state AC motor starters" in Int. Class 7; | Owned by TB Woods Enterprises, Inc.; entire mark registered under § 2(f) of the Act.[7] |
| **SUPERTAP** | for "tools for use with power operated machines, namely taps" in Class 7; | Owned by Kennametal Inc.; entire mark registered under § 2(f) of the Act.[8] |
| **SUPERLIFT** | for "hoists" in International Class 7; | Owned by Genie Industries, Inc.; entire mark registered under § 2(f) of the Act.[9] |
| **SUPER HOIST** | for "power operated lifts for material handling" in International Class 7; | Owned by Genie Industries, Inc.; the word "Hoist" is disclaimed; issued on Supplemental Reg.[10] |
| **SUPER CHOKE** | for "petroleum industry equipment, namely, remote adjustable high-pressure chokes with positive closure" in Class 7; | Owned by M-I L.L.C.; the word "Choke" is disclaimed; entire mark registered under § 2(f) of the Act.[11] |
| **SUPER TOOL** | for "compact folding tool comprising knife, pliers, and multiple blades, and leather and fabric sheaths therefor" in Class 8; | Owned by Leatherman Tool Group, Inc.; the word "Tool" is disclaimed; entire mark registered under § 2(f) of the Act.[12] |
| **SUPERWINCH** | for, *inter alia*, "winches and parts therefore; electric | Owned by Superwinch, LLC; |

[7] Registration No. 1686040 issued on May 12, 1992; renewed.

[8] Registration No. 1950685 issued on January 23, 1996; renewed.

[9] Registration No. 2086891 issued on August 12, 1997; renewed.

[10] Registration No. 2076560 issued on July 1, 1997; renewed.

[11] Registration No. 2181817 issued on August 18, 1998; renewed.

[12] Registration No. 2440250 issued on April 3, 2001; renewed.

8

| Mark | Goods | Comments |
|---|---|---|
|  | winches, hydraulic winches; winch repair kits primarily composed of winch component parts" in Class 7; | issued on Supplemental Reg.[13] |
| **SUPER FEEDER** | for "automated pet food dispensers namely, mechanized pet feeders" in International Class 7; | Owned by Super-Feed Enterprise, a partnership; the word "Feeder" is disclaimed; entire mark registered under § 2(f) of the Act.[14] |
| **SUPER CHISEL** | for "saw chain for chain saws" in Int. Class 7; | Owned by Blount, Inc.; entire mark registered under § 2(f) of the Act.[15] |
| **Superplow** | for "snow plows" in International Class 7; | Owned by Ponderosa Properties LLC; issued on Supplemental Reg.[16] |
| **SUPER V** | for "snow plows and plow blades for vehicles" in International Class 7; | Owned by Meyer Products, Inc.; issued on Supplemental Reg.[17] |
| **SUPERKNIFE** | for "hand held cutting tools, namely, knives and shears; blades for knives and shears; belt clips for attaching knives to tool belts; and knife blade sheaths" in Int. Class 8; | Owned by Fiskars Brands, Inc.; entire mark registered under § 2(f) of the Act.[18] |

---

[13] Registration No. 2865813 issued on July 20, 2004; Section 8 affidavit (six-year) accepted.

[14] Registration No. 2913097 issued on December 21, 2004; Section 8 affidavit accepted. In an application filed by the same partnership six months earlier, *infra* at 13, FN 38 (Registration No. 2812672 issued on February 10, 2004; renewed), the somewhat different treatment can be explained by the fact that the word "Feed" is not generic for "feeders" and the free-style, literal elements in this special form mark are surrounded by a significant design element.

[15] Registration No. 3352104 issued on December 11, 2007. We also note that Blount, Inc. is the owner of Registration No. 1083179 issued on January 24, 1978, for the mark SUPER GUARD, for identical goods, as cited by applicant, *infra* at 11, FN 25. With similarly situated marks issuing thirty years apart, here the difference in treatment is that the 2007 registration was issued under Section 2(f) of the Act.

[16] Registration No. 3383528 issued on February 12, 2008.

[17] Registration No. 3387162 issued on February 19, 2008.

[18] Registration No. 3444223 issued on June 10, 2008.

9

| Mark | Goods | Comments |
|---|---|---|
| **SUPER SPRAYER** | for "gardening tools, namely, sprayers; hand-operated sprayers for insecticide; hand-pumped sprayers for lawn and garden use" in Class 8; | Owned by H.D. Hudson Manuf. Co.; the word "Sprayer" is disclaimed; entire mark registered under § 2(f) of the Act.[19] |
| **SUPER CONE** | for "rock handling machines, namely, mobile rock crushing machines" in International Class 7. | Owned by Construction Equip. Co.; the word "Cone" is disclaimed; issued on Supplemental Reg.[20] |

Similarly, the following third-party registrations placed into the record by the examining attorney allegedly show how the Office typically treats the word "Jaw(s)" for a variety of grasping power tools in International Class 7:

| Mark | Goods | Comments |
|---|---|---|
| **HYDRO-JAW** | for "air powered drilling tools, namely, drills and hole openers used in the oil, gas, foundation drilling, construction and horizontal drilling industries" in International Class 7; | Owned by Center Rock, Inc.; issued on Supplemental Reg.[21] |
| **JAWS** | for "power operated rescue tools, namely, spreaders and power units therefore" in International Class 7; | Owned by Hale Products, Inc.; issued on Supplemental Reg.[22] |

---

[19] Registration No. 4001269 issued on July 26, 2011.

[20] Registration No. 4092488 issued on January 24, 2012.

[21] Registration No. 3433439 issued on May 20, 2008.

[22] Registration No. 3812291 issued on June 29, 2010. Hale Products, Inc. also claims ownership of the mark **JAWS OF LIFE** for rescue tools (the word "Jaws" is disclaimed), Registration No. 1017871 issued on August 12, 1975; second renewal.

10

| Mark | Goods | Comments |
|---|---|---|
| **SMARTJAW** | for "packaging equipment components, namely, seal jaws, pneumatic jaw controls and pneumatic jaw actuators" in International Class 7. | Owned by Matrix Packaging Machinery, Inc.; entire mark registered under § 2(f) of the Act.[23] |

By contrast, applicant points to copies of extant third-party registrations it timely made of record for tools in International Classes 7 and 8 having "Super-" formative marks in which the term "Super" is not disclaimed. Applicant concludes that this demonstrates that the United States Patent and Trademark Office does not find combined terms beginning with the designation "Super" to be merely descriptive, and asserts that these registrations cast further doubt on the proposition that applicant's applied-for mark is merely descriptive of its goods. The following registrations were included in this showing:

| Mark | Goods | Comments |
|---|---|---|
| **SUPER-CUT** | for "diamond tools for dressing abrasive wheels, diamond core drills, diamond core drill coolant heads, diamond reamers, diamond countersinks, magnetic chucks with demountable diamond rings, diamond wheel dressers, rotary diamond saws" in International Classes 7 and 8; | Owned by Saint-Gobain Abrasives Limited, a U.K. corporation[24] |
| **SUPER GUARD** | for "saw chain for chain saws" in International Class 7; | Owned by Blount, Inc.[25] |
| **SUPER LOOP** | for "novelty twisting textile machine" in International Class 7; | Owned by Textured Yarn Co., Inc.[26] |

[23] Registration No. 4113719 issued on March 20, 2012.

[24] Registration No. 0806675 issued on April 5, 1966; third renewal.

[25] Registration No. 1083179 issued on January 24, 1978; second renewal.

[26] Registration No. 1131214 issued on February 26, 1980; second renewal.

| Mark | Goods | Comments |
|---|---|---|
| **SUPER LIFE** | for "saw blades for power tools" in International Class 7; | Owned by Unicut Corporation[27] |
| **SUPER-GRIP** | for "collets and collet pads for use with machine tools" in International Class 7; | Owned by Positrol, Inc.[28] |
| **SUPER PAC** | for "construction and/or road-building vehicles, namely compaction rollers" in International Class 7; | Owned by Volvo Motor Graders Limited.[29] |
| **SUPER TAPER** | for "hair clippers" in International Class 8; | Owned by Wahl Clipper Corp.; the word "Taper" is disclaimed.[30] |
| **SUPERKROME** | for "hand tools, namely, combination wrench sets" in International Class 8; | Owned by SK Hand Tool LLC [31] |
| **SUPER SAWZALL** | for "hand held power saws" in International Class 7; | Owned by Milwaukee Electric Tool Corp.[32] |
| **SUPERPRO** | for "hand tools; namely, hand saws, screwdrivers, hacksaw blades and wrenches" in International Class 8; | Owned by Great Neck Saw Manufacturers, Inc.[33] |
| **SUPER MAXBIT** | for "drilling bits for use in drilling for water wells, for anchors and for pilings" in International Class 7; | Owned by Mitsubishi Materials Corporation[34] |
| **SUPERFELL** | for "power-operated tools, namely tree felling saws" in International Class 7; | Owned by Hultdin System AB, a Swedish corporation[35] |
| **SUPER-PRECISION** | for "machine tools, namely, grinders" in Int. Class 7; | Owned by Hardinge Inc.[36] |

---

[27] Registration No. 1245027 issued on July 12, 1983; renewed.

[28] Registration No. 1246859 issued on August 2, 1983; renewed.

[29] Registration No. 1378843 issued on January 21, 1986; renewed.

[30] Registration No. 1452948 issued on August 18, 1987; renewed.

[31] Registration No. 1594911 issued on May 8, 1990; second renewal.

[32] Registration No. 1677368 issued on March 3, 1992; second renewal.

[33] Registration No. 1863512 issued on November 22, 1994; renewed.

[34] Registration No. 1933195 issued on November 7, 1995; renewed.

[35] Registration No. 2040891 issued on February 25, 1997; renewed.

[36] Registration No. 2289167 issued on October 26, 1999; renewed.

| Mark | Goods | Comments |
|---|---|---|
| *SuperFramer* | for "machines and power operated tools for driving or fastening nails, fasteners or screws, namely, nail guns; pneumatic nailing machines and tools, namely, pneumatic nailers" in International Class 7; | Owned by Max Co., Ltd., a Japanese corporation[37] |
| (fish logo with "Super Feed") | for "automated pet food dispensers, namely, mechanized pet feeders" in International Class 7; | Owned by Super-Feed Enterprise, a partnership; the word "Feed" is disclaimed.[38] |
| *SuperDecking* | for "power tools, namely, drills, screwdrivers and nailing machines for driving or fastening nails, fasteners or screws; pneumatic nailing machines" in International Class 7; | Owned by Max Co., Ltd., a Japanese corporation[39] |
| **SUPERCRAFT** | for "manually operated hammers, excluding drill chucks for power-operated tools" in International Class 8; | Owned by Erwin Halder KG, of Germany[40] |
| **SUPEROLL** | for "machine tools for super finishing and hardening of metal surfaces, namely, roller burnishers and roller burnishing tool heads attachable to roller burnishers" in Int. Class 7; | Owned by Sugino Machine Limited, a Japanese corporation[41] |

[37] Registration No. 2419784 issued on January 9, 2001; renewed.

[38] Registration No. 2812672 issued on February 10, 2004; renewed.

[39] Registration No. 2879374 issued on August 31, 2004; Section 8 affidavit accepted and Section 15 affidavit acknowledged.

[40] Registration No. 3285462 issued on August 28, 2007; Section 8 affidavit accepted and Section 15 affidavit acknowledged.

[41] Registration No. 3317721 issued on October 23, 2007.

| Mark | Goods | Comments |
|------|-------|----------|
| **SUPERFLOW** | for, *inter alia*, "power-operated coolant dispensers for machine tools" in International Class 7; | Owned by Mazak Corporation[42] |
| **SUPERBUG** | for "machines and machine tools, namely, automatic swimming pool cleaners and parts therefor; automatic swimming pool sweepers; devices for swimming pools, namely, swimming pool vacuums and swimming pool vacuum hoses; and structural component parts of all the aforesaid goods" in International Class 7. | Owned by Arengo 309 (PTY) LIMITED of South Africa[43] |

Likewise, applicant included copies of similarly-structured "Super-" formative marks registered in connection with goods in other classes (related to International Class 7 and 8) that it contends are of the same type as the goods applied for herein:

| Mark | Goods | Comments |
|------|-------|----------|
| **SUPER COIL** | for "key holders made of elastic coil *e.g.*, polyurethane, having metallic holders attached thereto" in International Class 20; | Owned by QMP Enter. Inc.; the word "Coil" is disclaimed.[44] |
| **SUPER 1200** | for "cold finished steel bar for machining" in International Class 6; | Owned by Niagara LaSalle Corp.[45] |
| **SUPER HOG** | for "welded steel mill chain for conveyors in sawmills and paper mills" in Int. Class 6; | Owned by Conveyco Mfg. Co.[46] |

[42] Registration No. 3491118 issued on August 26, 2008.

[43] Registration No. 3785520 issued on May 4, 2010.

[44] Registration No. 1063900 issued on April 19, 1977; second renewal.

[45] Registration No. 1610378 issued on August 21, 1990; second renewal.

[46] Registration No. 1678255 issued on March 10, 1992; second renewal.

14

| Mark | Goods | Comments |
|------|-------|----------|
| **SUPER ALURITE** | for "coated metal roofing and siding" in International Class 6; | Owned by Fabral, Inc.[47] |
| **SUPER SLIDERS** | for "furniture casters, namely glides made of plastic" in International Class 20; | Owned by Waxman Consumer Products Group, Inc.[48] |
| **SUPER STUD** | for "metal structural beams for concrete form assemblies, namely, beams used externally and temporarily as framing supports for the construction of concrete form assemblies" in International Class 6; | Owned by Wilian Holding Co.[49] |
| **SUPER STRAP** | for "cargo restraint devices in the nature of plastic fixtures to which restraint bands are attached" in International Class 20; | Owned by Logistick, Inc.; the word "Strap" is disclaimed.[50] |
| **SUPER MULTI-CLIP** | for "non-metal table skirting clips" in International Class 20; | Owned by FASTENation, Inc.[51] |
| **SUPER BRITE** | for "aluminum alloys in the form of sheets and plates" in International Class 6; | Owned by Commonwealth Aluminum Metals, LLC; the word "Bright" is disclaimed.[52] |
| **SUPER EDGE** | for "flexible cutting line for use in lawn and garden string trimmer spools on rotary trimmers" in Int. Class 22. | Owned by Proulx Manuf., Inc.; the word "Edge" is disclaimed.[53] |

Again, applicant noted that there were no disclaimers of the word "Super" in any of these registrations.

---

[47] Registration No. 1953442 issued on January 30, 1996; renewed.

[48] Registration No. 1988909 issued on July 23, 1996; renewed.

[49] Registration No. 2491660 issued on September 25, 2001; renewed.

[50] Registration No. 2624308 issued on September 24, 2002; renewed.

[51] Registration No. 3448421 issued on June 7, 2008.

[52] Registration No. 3521292 issued on October 21, 2008.

[53] Registration No. 3813016 issued on July 6, 2010.

15

C. Analysis

*Jaws*

The term "jaws" appears twice in applicant's International Class 7 identification of goods ("machine tools, namely, *jaws* ... ; workbench accessories, ... in the nature of ... *jaws* ...") and six times in its International Class 8 identification of goods (*e.g.*, hand tools, namely, ... metal vice *jaws*, ... ; workbench accessories ... in the nature of ... *jaws* ..."). This is consistent with the dictionary definitions of the word "Jaw," particularly entries referring to machines having two or more opposable parts capable of grasping or holding something, and we find that the term "jaws" describes equally well applicant's machine tools in International Class 7 and hand tools in International Class 8. Similarly, in the three registrations listed above, where the term "Jaw" (or "Jaws") has been adopted for use in connection with grasping machines in International Class 7 (even those where this exact terminology "jaw" does not appear in the identification of goods), the registrations of the marks issued on the Supplemental Register or on the Principal Register based on evidence of acquired distinctiveness as to the entire composite mark.

We acknowledge that not all the goods listed in applicant's identification of goods are identified as "jaws" and others are not clearly grasping tools. However, if the mark is descriptive of some identified items – or even just one – the whole class of goods still may be refused by the examiner. *In re Chamber of Commerce*, 102 USPQ2d at 1220; *In re Oppedahl & Larson LLP*, 373 F.3d 1171,

16

1173, 71 USPQ2d 1370, 1371 (Fed. Cir. 2004) ("[A] mark may be merely descriptive even if it does not describe the 'full scope and extent' of the applicant's goods or services.") (citation omitted). If the Board affirms a refusal of an entire class based on the descriptiveness of the mark for one or more goods in the class, then the entire class will fail.

Hence, we find that the term "Jaws" as used in applicant's mark is highly descriptive of the listed goods, and standing alone the term "Jaws" might well be generic for the goods.

### *"Super-" formative Marks*

We turn then to the first word of applicant's proposed compound word mark: "super." The record contains dictionary definitions of the word "super" along with some helpful usage notes therefor. Not surprisingly, composite marks built from "Super-" formatives have been previously discussed in various precedential decisions. In fact, applicant and the examining attorney do seem to be in agreement that there is no *per se* rule on how the United States Patent and Trademark Office should treat the word "super." In this regard, as to composite marks beginning with the prefix, "super," this Board had occasion more than a decade ago to provide some helpful guidance on the sometimes unclear line of demarcation between such marks that would be found merely descriptive and those that are, at worst, suggestive:

> A general proposition which may be distilled from the foregoing cases is that if the word "super" is combined with a word which names the goods or services, or a principal component, grade or size thereof, then the composite term is considered merely descriptive of the goods or services, but if such is not strictly true, then the

17

> composite mark is regarded as suggestive of the products or services. Here, joining the laudatory word "super" with the generic fabric name "silk" to form the term **SUPER SILK** results in a composite which plainly has a meaning identical to the meaning which ordinary usage would ascribe to such words in combination. *See, e.g., In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 110, 1111-12 (Fed. Cir. 1987) * * *."
>
> Consequently, when considered in its entirety, the term **SUPER SILK** would in a laudatory fashion immediately describe, without conjecture or speculation, a significant quality, characteristic or feature of any articles of clothing, including dress shirts and sport shirts, made of silk fabric. Purchasers and potential customers for such goods would plainly understand, as asserted by the Examining Attorney, that because shirts, like other items of apparel, are commonly made of silk, the term **SUPER SILK** designates goods made of an excellent, first-rate, or superior grade of silk fabric and not, as suggested by applicant, those produced from "a fabric that is similar but superior *to* silk" (emphasis added).

*In re Phillips-Van Heusen Corp.*, 63 USPQ2d 1047, 1052 (TTAB 2002). We find this distinction explains well the difference in result between many of the "Super-" formative marks listed by applicant and those listed by the examining attorney.

Applicant makes much of the fact that there were no disclaimers of the prefatory term "Super" in any of the third-party registrations it submitted. However, especially in those registrations (having "Super-" formative composite marks) that issued since the time *Phillips-Van Heusen* was decided, the follow-on wording does not appear to fit the bar of the *Phillips-Van Heusen* description for merely descriptive composites (" … a word which names the goods or services, or a principal component, grade or size thereof … ").

Rather, under the principles articulated in *Phillips-Van Heusen*, when the leading word "Super" is joined with a suggestive term (*e.g.*, "Strap" for " … plastic fixtures to which restraint bands [straps] are attached"; "Brite" for aluminum sheets; or "Edge" for cutting line for use in string trimmer), the combination remains suggestive.

Furthermore, we note that even the majority of the earlier composite marks applicant listed that were registered before the decision in *Phillips-Van Heusen* issued in March 2002 were similarly consistent[54] with this guidance inasmuch as these combined forms each appear to be highly suggestive, at worst, of the listed goods.

As to at least a dozen marks on applicant's second list of registrations, for goods in International Classes 7 and 8, the composite marks are "unitary." In the event that only one word of a unitary mark should be found merely descriptive, it would be inappropriate to disclaim that portion of the unitary mark. TMEP § 1213.05 (April 2013).

In substantially all of the registered "Super-" formative composite marks placed into the record by the examining attorney, the second term in the composite marks describes or even "names the goods" in International Classes 7 or 8. The

---

[54] On the other hand, to the extent that there are copies of registrations placed into the record that do not follow this guidance, while the United States Patent and Trademark Office (USPTO) strives for a high level of consistency, we acknowledge that occasionally the Register contains results that are not perfectly consistent. As the Federal Circuit has noted on more than one occasion, that each case must be examined on its own merits against the backdrop of the governing statute(s), and that the USPTO's allowance of prior registrations that may have some characteristics of the application at hand does not bind the USPTO. *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 91 USPQ2d 1218, 1221 (Fed. Cir. 2009); and *In re Nett Designs, Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001).

resulting composites plainly have a meaning identical to the meaning which ordinary usage would ascribe to such words in combination. Accordingly, each of the marks in these applications issued on the Supplemental Register or if on the Principal Register, the entire mark was shown to have acquired distinctiveness under Section 2(f) of the Act. Only in those cases where the "Super" preface and the immediately-following, highly descriptive or generic term were separable elements was the latter term disclaimed.

Finally, applicant repeatedly argues that the term **SUPERJAWS** immediately evokes connotations of Superman or another superhero rather than laudatorily describing these goods in an overarching sense. We find this "superhero" argument to be without any basis in the record. There is nothing inherent in the structure of the term "Superjaws," or in the context in which the mark will be used, that would prompt a result different than the other forty-five "Super-" formative marks made a part of this record.

In the case at bar, rather than being propelled into visions of the iconic superhero who is "faster than a speeding bullet" or "more powerful than a locomotive" (arguments in applicant's brief at 21), or even possibly inciting panic over an unparalleled menace on Amity Island, we find the dictionary definitions of "super" meaning "powerful," "high-quality," or "excellent" to be more relevant in this construction.

In fact, we find that prospective consumers of the identified goods would readily understand that applicant's applied-for mark describes a superior vice system for

grasping and holding work pieces. The name "Superjaws" immediately and intuitively conveys information about heavy-duty workbench accessories and attachments having hundreds, if not thousands, of pounds of clamping pressure. Accordingly, because we retain no doubt in the matter, we find that the term **SUPERJAWS** is merely descriptive of applicant's listed goods in International Classes 7 and 8.

*Decision*: The refusal to register the **SUPERJAWS** applied-for mark under Section 2(e)(1) of the Lanham Act is hereby affirmed.